**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**EASTERN DIVISION**

CHRISTOPHER DEATON,
ADC #143472                                                                                    PLAINTIFF

V.                                        2:12-cv-00186-JLH-JTK

ARKANSAS DEPARTMENT OF
CORRECTION, et al.                                                                DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge J. Leon Holmes.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.   Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.        Why the record made before the Magistrate Judge is inadequate.

2.        Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

1

3.     The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## DISPOSITION

## I.     Introduction

Plaintiff Deaton, a state inmate incarcerated at the East Arkansas Regional Unit of the Arkansas Department of Correction (ADC), was granted leave to proceed in forma pauperis in this pro se 42 U.S.C. § 1983 action (Doc. No. 7).  In his Complaint, Plaintiff alleges the following against twenty-five named Defendants: 1) the ADC grooming policy violates Plaintiff's First Amendment right to free exercise of his religious beliefs; 2) the ADC grooming policy violates the Religious Land Use and Institutionalized Persons Act (RLUIPA); 3) Defendants violated the ADC grooming policy by issuing disciplinary charges against Plaintiff for non-compliance with grooming standards while he was serving previous disciplinary sentences for those same charges; 4) Defendants violated his constitutional rights to be free from cruel and unusual punishment by confiscating his mattress from 7 a.m. until 7 p.m. while serving a sentence in punitive isolation; and 5) Defendant Gray was deliberately indifferent to her duties as law library supervisor by failing to

ensure that copies of ADC policies and procedures were available for Plaintiff's inspection and review. Plaintiff asks for monetary and injunctive relief from the Defendants.

## II.     Screening

The Prison Litigation Reform Act (PLRA) requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

An action is frivolous if "it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Whether a plaintiff is represented by counsel or is appearing pro se, his complaint must allege specific facts sufficient to state a claim. See Martin v. Sargent, 780 F .2d 1334, 1337 (8th Cir.1985).

An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). In reviewing a pro se complaint under § 1915(e)(2)(B), the Court must give the complaint the benefit of a liberal construction. Haines v. Kerner, 404 U.S. 519, 520 (1972). The Court must also weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless. Denton v. Hernandez, 504 U.S. 25, 32 (1992).

## III.     Facts and Analysis

In order to support a claim for relief against Defendants pursuant to 42 U.S.C. § 1983, Plaintiff must allege that a person acting under the color of state law deprived him of some

Constitutional right.  Griffin-El v. MCI Telecommunications Corp., et al., 835 F.Supp. 1114, 1118 (E.D.MO 1993).   Initially, the Court notes that Plaintiff's allegations against the Arkansas Department of Correction (ADC) should be dismissed.  The ADC is an agency of the State of Arkansas, and therefore, is protected from § 1983 liability by Eleventh Amendment immunity.  See Glick v. Henderson, 855 F.2d 536 (8th Cir. 1988).  The Court will review Plaintiff's remaining allegations as follows:

### A.    ADC Grooming Policy - First Amendment and RLUIPA

Plaintiff challenges the ADC grooming policy as unconstitutional and as violative of the RLUIPA.  The purpose of the policy at issue, Administrative Directive (AD) 98-04, is to "provide for the health and hygiene of incarcerated offenders, and to maintain a standard appearance throughout the period of incarcerations, minimizing opportunities for disguise and for transport of contraband and weapons."   (Doc. No. 2, p. 97.)  The policy states that inmates' hair should be "cut so as to be above the ear, with sideburns no lower than the middle of the ear lobe and no longer in the back than the middle of the nape of the neck."  (Id.)  In addition, inmates are not permitted to wear facial hair other than a neatly trimmed moustache, and inmates with diagnosed dermatological problems may be permitted to wear facial hair no longer than one quarter of an inch if so prescribed by medical staff.  (Id. at p. 98.)  Plaintiff states he took a vow as a Nazarite in August, 2007, which requires that during his vow period, which will end on November 23, 2014, no razor may be used on his head.  (Id. at p. 7.)  Because of his religious beliefs, Plaintiff has refused to cut his hair since he entered the ADC in March, 2009.  (Id. at p. 8.)  As a result, he is repeatedly charged with rule violations, including failure to obey verbal and written staff orders, and failure to keep one's person in accordance with regulations.  (Id.)  The punishment, or consequences of these rule violations,

include placement in punitive segregation where an inmate's mattress is removed from 7 a.m. to 7 p.m. daily, confiscation of personal property, commissary restrictions, loss of media and phone use and loss of good time credits.  (Id. at p. 9.)

As noted earlier, Plaintiff claims the ADC grooming policy violates his First Amendment right to free exercise of religion, together with RLUIPA, which provides that no government shall impose a "substantial burden" on the religious exercise of an inmate, unless the government demonstrates that imposition of the burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. 42 U.S.C. §2000cc-1.  Having reviewed Plaintiff's Complaint, however, the Court finds that the ADC grooming policy has previously been found to be constitutional and not violative of RLUIPA.

In Fegans v. Norris, inmate Fegans challenged ADC grooming policy AD 98-04 as a substantial burden on the exercise of his religious beliefs as a follower of the teaching of the Assemblies of Yahweh, by requiring him to cut his hair.  537 F.3d 897, 900 (8th Cir. 2008).   He also claimed the policy served no compelling state interests and was more restrictive than necessary to further its stated goals, in violation of RLUIPA.  (Id.) The prison officials testified that the policy was designed to minimize the smuggling of contraband and to reduce the opportunity for disguise, and offered specific examples to show that inmates had used their hair to conceal contraband and to change their appearance after escaping.  (Id. at 903.)  Officials also testified that there was not a less restrictive means to address the security concerns, because "longer hair created a greater opportunity for inmates to conceal contraband, and because correctional officers are placed at risk of assault if they are required to search through the long hair of individual inmates."  (Id.)  The Court held that Fegans' constitutional claims failed because the policy is reasonably related to

legitimate penological interests of security, and that the policy withstands scrutiny under RLUIPA. (Id. at 906.)    Following Fegans, another inmate challenged the same ADC grooming policy as violative of his right to free exercise of religion and RLUIPA, in Holsombach v. Norris, No. 2:08cv00022-JMM-BD, 2009 WL 424166 (E.D.Ark.).  Relying on Fegans, and after conducting an evidentiary hearing on the matter, the Court concluded that "while the ADC grooming policy conflicts with Plaintiff's sincerely held religious beliefs, it does not violate his free exercise rights under either the First Amendment or RLUIPA."  (Id. at *5.)

Plaintiff Deaton challenges the same ADC policy for the same reasons set forth in Fegans and Holsombach.  Based on those decisions, and the allegations set forth in Plaintiff's Complaint, the Court finds that Plaintiff's First Amendment and RLUIPA claims regarding the ADC grooming policy fail to state a claim upon which relief may be granted, and should be dismissed.

### B.    Unit Grooming Policy - Failure to Properly Implement

Plaintiff alleges that the Unit grooming policy, 9.14.0, "mimics" AD 98-04, "with the exception of additional procedural 'progressive steps' that instruct EARU officials on how to apply 'disciplinary action' for non-compliance of grooming standard."  (Doc. No. 2, p. 12.)  According to this policy, after an inmate is charged with violation of the rule requiring to keep his hair in accordance with regulation, the inmate must be given an opportunity to conform to grooming standards before facing a second disciplinary action, and should not be written a subsequent disciplinary while still serving a sentence for a previous violation of grooming standards.  (Id.) Plaintiff states he has been written thirty-two major disciplinary violations based on failure to comply with grooming standards, twenty-five of which were written while he was still serving a sentence for a previous grooming standard violation, in violation of his due process rights.

Plaintiff's due process allegation, however, fails to state a claim upon which relief may be granted, because the "mere violation of a state law or rule does not constitute a federal due process violation. Williams v. Nix, 1 F.3d 712, 717 (8th Cir. 1993). And to the extent that Plaintiff is challenging the specific disciplinary charges/violations and seeking to recover damages for those he deems unlawful, such falls within the context of Edwards v. Balisok, 520 U.S. 641 (1997), and Heck v. Humphrey, 512 U.S. 477 (1994). In Balisok, supra, the Court held that the plaintiff in that action could not pursue a section 1983 claim for declaratory relief and money damages based on allegations that prison officials used the wrong procedures in a disciplinary action which resulted in his loss of good time credits. The Court held that even though plaintiff did not allege that the prison officials reached the wrong result in their proceedings, the nature of the challenge to the proceedings could be "such as necessarily to imply the invalidity of" those proceedings. Id., 520 U.S. at 645. The Court also held that its decision was not affected by the fact that plaintiff did not seek credit for the loss of good-time. In the earlier case of Heck v. Humphrey, supra, the Supreme Court held that if a judgment in favor of a prisoner in an action under 42 U.S.C. § 1983 would necessarily imply the invalidity of the conviction, continued imprisonment, or sentence, then no damages claim lies unless the conviction or sentence is reversed, expunged, or called into question by a state tribunal or federal court. See also Sheldon v. Hundley, 83 F.3d 231 (8th Cir. 1996).

In this particular case, Plaintiff specifically alleges that his due process rights were violated because of the manner in which he was charged with violations while serving prior sentences for similar violations, and that such resulted in the loss of his good time credits (Doc. No. 2, p. 9). Therefore, the Court finds that these allegations should be dismissed.

### C.    Punitive Conditions

Plaintiff next alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by confiscating his mattress from 7 a.m. until 7 p.m. each day.  He states that removal of the mattress as a disciplinary measure is a form of "corporal punishment," but notes that the mattress may be removed for the following security reasons: the protection of the mattress; prevention of fire hazards; and prevention of plumbing problems caused by inmates flushing pieces of mattress down the toilet. (Doc. No. 2, p. 24.)   He also states that inmates housed in punitive isolation are surrounded by inmates on investigative and disciplinary court review (DCR) status, and therefore, Defendants are not providing equal treatment to similarly-situated inmates.

In order to support an Eighth Amendment claim against Defendants, Plaintiff must show that the deprivation is "sufficiently serious" and that the prison officials' actions demonstrate a "deliberate indifference" to the prisoner's health or safety.  Rahman X v. Morgan, 300 F.3d 970, 974 (8th Cir. 2002).  "A deprivation is 'sufficiently serious' if it denies a prisoner the 'minimum civilized measures of life's necessity.'" Id. at 974, quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The Courts generally have approved prison measures restricting times of mattresses in cells. In Finney v. Hutto, a class action case challenging the conditions of confinement in the ADC, the court noted that the evidence presented showed that when violent inmates "act out," they are apt to set mattresses on fire or tear them up and stuff pieces in the toilet, and that the incidents more commonly took place during the daytime.  410 F.Supp. 251, 278 (D.C.Ark. 1976).  The Court found that the argument for removal of mattresses was valid.  (Id.)  Likewise, in Finney v. Mabry, the court reviewed changes made by the ADC in response to a consent decree, concluding that the "removal of mattresses, and the denial of their privileges by the respondents as punishment, are matters fully

8

within the discretion of the administrators of the prison. These are matters which reflect attitudes toward the use of punishment as a method of managing inmates within the context of a prison and do not rise to constitutional magnitude as presently enforced."   534 F.Supp. 1026, 1032-33 (D.C.Ark. 1982).   In Whited v. Waddle, an inmate serving punitive confinement challenged the institution's practice of taking his mattress daily from 7 a.m. until 7 p.m. as violative of due process. No. 5:06cv00136-SWW-HDY, 2006 WL 1729679 (E.D.Ark. 2006).   The Court held that although the deprivation may have been significant, it was not atypical in violation of due process. (Id. at *2.) And, in Jones v. Foster, the Court upheld the taking of mattresses from inmates during the daytime, finding no evidence of deliberate indifference to health and safety.   No. 1:10cv01006, 2011 WL 4088516 (W.D.Ark. 2011).   The court stated as follows:

> Prison officials are permitted to take measures to preserve the security and safety of the facility and its employees, to control the inmates, and to preserve the safety and security of the inmates.   See e.g., Johnson v. Williams, 788 F.2d 1319 (8th Cir. 1986).   The measures taken by Defendants, while they may have been disagreeable to the inmates, did not violate the Eighth Amendment.

In this particular case, Plaintiff acknowledges the ADC security reasons for the mattress policy, noting that some inmates have used them in the destruction of property, yet claims it is punitive because most of the inmates do not act out in that way.   (Doc. No. 2, pp. 24, 26.)   He does not allege any injury suffered from the restriction which would support a finding of a denial of a minimum civilized measures of life's necessity, as set forth in Wilson v. Seiter, 501 U.S. at 298. Therefore, the Court finds that Plaintiff's allegation of the confiscation of mattresses during the daytime, without more, fails to support a constitutional claim for relief.[1]

---

[1]To the extent that Plaintiff attempts to allege an equal protection claim, since he alleges that other inmates on investigative and disciplinary court status are not deprived of their mattresses, he also fails to support a claim for relief.   The equal protection clause generally requires the government to treat similarly situated people alike.   Klinger v. Department of

### D.      Law Library

Plaintiff alleges Defendant Gray, the law library supervisor, violated his due process rights by failing to include an updated version of the Unit Grooming policy in the library.  Plaintiff claims he became aware of the existence of a law library index on December 26, 2011, but did not receive a copy in response to his numerous requests for such until March 13, 2012.  After he received it, however, he realized that it was not up to date, and so he requested that Gray provide him an updated copy.  Plaintiff received that copy on April 5, 2012, requested a copy of the updated Unit grooming policy, and received such on April 12, 2012.

As a result of the delay, Plaintiff states he was not aware of the provision in the policy which states that an inmate should not be written a subsequent disciplinary charge while still serving a sentence for a previous violation of grooming standards.  If he had been aware of such, Plaintiff states he could have defended himself with that provision in twenty-five of his disciplinary hearings, thus preventing him from serving approximately 750 days of punitive segregation.

As noted earlier, however, a violation of ADC rules does not support a constitutional claim for relief.  <u>Williams v. Nix</u>, 1 F.3d at 717.  In addition, Plaintiff does not allege any actions or conduct by Defendant Gray to support the finding of a constitutional violation.  Therefore, the Court finds that this claim should be dismissed for failure to state a claim upon which relief may be granted.

---

<u>Corrections</u>, 31 F.3d 727, 730 (1994).  However, Plaintiff acknowledges in his complaint that inmates on investigative status or disciplinary court status are not similar to those who already have been convicted of disciplinary violations, and are serving time in punitive isolation.  (Doc. No. 2, pp 23-25.)

**IV.     Conclusion**

IT IS, THEREFORE, RECOMMENDED that Plaintiff's Complaint against Defendants be DISMISSED with prejudice, for failure to state a claim upon which relief may be granted.

IT IS FURTHER RECOMMENDED that this dismissal constitute a "strike" within the meaning of the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915(g).[2]

IT IS FURTHER RECOMMENDED that the Court certify, pursuant to 28 U.S.C. 1915(a)(3), that an in forma pauperis appeal from an Order and Judgment dismissing this action would not be in good faith.

IT IS SO RECOMMENDED this 15th day of October, 2012.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE

---

[2]The statute provides that a prisoner may not file an in forma pauperis civil rights action or appeal if the prisoner has, on three or more prior occasions, filed an action or appeal that was dismissed as frivolous, malicious or for failure to state a claim, unless the prisoner is under imminent danger of serious physical injury.