**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

CHRISTOPHER DEATON,                                                                   PLAINTIFF
ADC #143472

v.                                          2:12CV00186-JLH-JTK

ARKANSAS DEPARTMENT OF CORRECTION; et al.                      DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge J. Leon Holmes.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.     Why the record made before the Magistrate Judge is inadequate.

2.     Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.     The detail of any testimony desired to be introduced at the hearing before the District

1

Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

### I.      Introduction

This matter is before the Court on Defendant Gray's Motion for Summary Judgment (Doc. No. 68). Plaintiff filed Responses in opposition to the Motion (Doc. Nos. 76-78).

Plaintiff Christopher Deaton is a state inmate incarcerated at the Varner Unit of the Arkansas Department of Correction (ADC). He filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, alleging constitutional violations associated with the application of the ADC grooming policy while he was housed at the East Arkansas Regional Unit (EARU). By Order dated January 22, 2013, this Court dismissed all of Plaintiff's claims against all the Defendants, except his denial of access to the courts claim against Defendant Janice Gray. (Doc. No. 19). Plaintiff asks for monetary relief. **II.      Complaint**

Specifically, Plaintiff states that because he took a vow as a Nazarite in August, 2007, he could not obey the ADC grooming policy (Administrative Directive 98-04), which forbids long hair and beards. (Doc. No. 2, pp. 7, 8.) In March, 2009, he was charged and convicted of failure to obey verbal and/or written staff orders, and failure to keep one's person in accordance with regulations

2

(the grooming policy), and sentenced to thirty days in punitive isolation. (Id., p. 8). Plaintiff alleges he was repeatedly charged with similar disciplinary violations after that time, due to his refusal to cut his hair. (Id., p. 9.) Plaintiff states that he became aware of a Unit grooming policy (as opposed to AD 98-04, the ADC grooming policy), and requested a law library index in December, 2011. (Id., p. 11.) When he finally received the index on March 13, 2012, after six requests, he found that it was not up to date. (Id.) He requested an updated version on March 19, 2012, and received it on April 5, 2012. (Id.) He then requested a copy of the Unit grooming policy, which he received on April 12, 2012. (Id.)

Plaintiff states that the Unit grooming policy "mimics" the ADC grooming policy, with the exception of additional procedures guiding the application of the policy. (Id., p. 12.) Of specific interest to Plaintiff are steps 2 and 3, which provide as follows:

> 2.    If counseling is not successful, a disciplinary report may be written charging the inmate with violation of rule 2-12 for failure to keep one's person or quarters in accordance with regulations. 2-12 is the only rule violation to be used for this specific behavior of non-compliance with grooming standards.

> 3.    The inmate must be given an opportunity to conform to grooming standards before facing a second or subsequent disciplinary action. An inmate will not be written a second subsequent disciplinary while still serving a sentence for a previous violation of grooming standards.

(Id.)

Plaintiff claims that Defendant Gray violated his due process rights by failing to include an updated version of this Unit Grooming policy in the library. As a result, Plaintiff states he was not aware of the provision in the policy, until April, 2012, which states that an inmate should not be written a subsequent disciplinary charge while serving a sentence for a previous violation of

grooming standards.  Had he been aware of such, Plaintiff states he could have defended himself in twenty-five disciplinary hearings, and prevented additional sentences of approximately 750 days of punitive segregation.  In addition, Plaintiff states he was improperly convicted each time of two rule violations, when the policy specifically provides that only one charge should be issued.

## III.    Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).  "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted).  "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'"  Id. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

### A.    Defendant's Motion

Defendant Gray initially states that Plaintiff's official capacity claims against her for monetary relief should be dismissed, pursuant to sovereign immunity, citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 65-66 (1989), and Murphy v. State of Arkansas, 127 F.3d 750, 754 (8th

Cir. 1997).  She also states that since Plaintiff is no longer housed at the EARU Unit, his claim for injunctive relief should be denied as moot.  (Defendant then states that Plaintiff did not assert an injunctive relief claim against her.)[1]

Defendant also states Plaintiff cannot support a denial of access to the courts claim against her, and that he was not constitutionally entitled to have access to the Unit policy in order to challenge his disciplinary convictions.  She also claims protection from liability by qualified immunity, stating that she did not violate any clearly established constitutional right by failing to provide an updated index of Unit level policies.  In addition, Defendant Gray provided Plaintiff with the requested policy as soon as it was provided to her by other ADC officials.

### B.    Plaintiff's Response

Plaintiff first states that he is personally aware of another incident, involving a fellow inmate, where Defendant Gray was notified of missing policies and an inadequate law library index at least a year and a half prior to the time he requested such.  He claims Defendant Gray was responsible for ensuring that the law library was adequately equipped with proper legal materials, and her reckless failure to do so resulted in a violation of his due process rights.  Since he was continuously charged with disciplinary violations for failure to abide by the grooming policy, many times in violation of the Unit policy, he was not able to adequately defend himself from those improper charges because he was unaware of the Unit policy requirements.  Defendant's actions in denying him fair notice of this policy was clearly established , and therefore, she cannot claim protection by qualified immunity.    **C.    Analysis**

---

[1]In his Complaint, Plaintiff seeks "compensatory damages in an amount the court deems just, proper, and equitable against defendant Janice Gray only."  (Doc. No. 2, p. 51.)

The Court initially agrees with Defendant that Plaintiff's monetary claims against him in his official capacity are barred by sovereign immunity.  Will v. Michigan Dep't. of State Police, 491 U.S. at 65-66; Murphy v. State of Arkansas, 127 F.3d at 754.  The Court also notes that Defendant's argument about injunctive relief is inapplicable and moot, since she admits that Plaintiff did not request injunctive relief. (Doc. No. 70, p. 6.)

Having reviewed the Plaintiff's allegations and Defendant's response, and the law applicable to denial of access to the courts claims, the Court finds Defendant Gray is entitled to qualified immunity from liability.  Qualified immunity protects officials who act in an objectively reasonable manner.  It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity is a question of law, not a question of fact.  McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005).  Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether a defendant is entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful.  Pearson v. Callahan, 555 U.S. 223, 232 (2009); see also Saucier v. Katz, 533 U.S. 194,

201 (2001).[2]  Defendants are entitled to qualified immunity only if no reasonable fact finder could

answer both questions in the affirmative.  Nelson v. Correctional Medical Services, 583 F.3d 522,

528 (8th Cir. 2009).

      This Court will first look to whether Plaintiff's allegations support the finding of a violation

of a constitutional right.  In Bounds v. Smith, the court held that "the fundamental constitutional

right of access to the courts requires prison authorities to assist inmates in the preparation and filing

of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance

from persons trained in the law."  430 U.S. 817, 828 (1977).  The term "adequate" has been defined

as referring "not to the effectiveness of the representation, but to the adequacy of the prisoner's

access to his or her court-appointed counsel or other law-trained assistant."  Schrier v. Halford, 60

F.3d 1309, 1314 (8th Cir. 1995).  In other words, if "there is an adequate law library available or if

there is assistance available from persons trained in the law, then the state has satisfied the inmates'

right to meaningful access to the courts."  Little v. Norris, 787 F.2d 1241, 1244 (8th Cir. 1986).

Furthermore, in Lewis v. Casey, the court held that "Bounds did not create an abstract, freestanding

right to a law library," and that "an inmate cannot establish relevant actual injury simply by

establishing that his prison's law library or legal assistance program is subpar in some theoretical

sense."  518 U.S. 343, 351 (1996).  Rather, "the inmate therefore must go one step further and

demonstrate that the alleged shortcomings in the library or legal assistance program hindered his

efforts to pursue a legal claim," and he cannot satisfy the injury requirement by "just any type of

---

[2]Courts are "permitted to exercise their sound discretion in deciding which of the two
prongs of the qualified immunity analysis should be addressed first in light of the circumstances
in the particular case at hand."  Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th
Cir. 2009) (quoting Pearson v. Callahan, 555 U.S. at 236).

frustrated legal claim." Id. at 351, 354.  Rather, "the tools it [Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." Id. at 355.

Plaintiff claims an actual injury by virtue of his excess confinement in punitive isolation, of more than 750 days, which he claims he could have prevented had Defendant Gray provided him with an updated copy of the Unit policies available.  However, this argument is weakened by the fact that Plaintiff does not deny that he continued (and continues) to defy the grooming policy, and that his actions constituted a violation of the rules for which he should be punished. Therefore, regardless of whether Plaintiff was aware of the policy preventing officials from charging him with a violation prior to completion of a prior sentence, theoretically he still would have been punished for a subsequent grooming violation upon completion of each of his sentences.  Considering this, the Court is not completely sure that Plaintiff's claimed injury is an "actual" one, within the meaning of Lewis v. Casey, 518 U.S. at 354-55.

However, even assuming an actual injury, and therefore, a Constitutional violation, the Court finds that the law was not clearly established so that Defendant Gray was on notice that her failure to provide an updated policy used to defend a disciplinary charge was considered a Constitutional violation.  In Lewis v. Casey, the Court noted that the injury requirement is "not satisfied by just any type of frustrated legal claim." 518 U.S. at 354.  The Court then referred to claims typically found in denial of access cases, such as those challenging criminal convictions, habeas petitions, and civil rights actions filed pursuant to 42 U.S.C. § 1983, "to vindicate 'basic constitutional rights.'" Id., quoting Wolff v. McDonnell, 418 U.S. 539, 579 (1974).  With respect to the present case, however, the Court has not located any clearly established law which states that a failure to keep an updated

8

law library index, which <u>could have</u> helped an inmate defend a disciplinary charge at a prison hearing, constitutes one of those protect able actions.

The Court therefore finds that Defendant Gray acted reasonably under the circumstances. In response to Plaintiff's March 20, 2012 grievance about the index, Defendant Gray wrote, "was in the process of obtaining the updated information from Compliance (Jim Smith).   A copy of punitive segregation revised copy will be delivered Thursday...." (Doc. No. 68-1, pp. 115-116.) No reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, established a violation of a constitutional or statutory right by Defendant Gray.

## III.    Conclusion

IT IS, THEREFORE, RECOMMENDED that Defendant Gray's Motion for Summary Judgment (Doc. No. 68) be GRANTED, and that Plaintiff's complaint be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 28th day of January, 2014.

_____

JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE